# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent-Appellee | ) | |
| | ) | |
| v. | ) | 13-70013 |
| | ) | |
| **BRANDON BERNARD,** | ) | |
| | ) | |
| Movant-Appellant. | ) | |

## CONSOLIDATED WITH

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | 13-70016 |
| | ) | |
| **CHRISTOPHER ANDRE VIALVA,** | ) | |
| | ) | |
| Movant-Appellant. | ) | |

On Appeal from the United States District Court
for the Western District of Texas at Waco
No. W-99-CR-70

## PETITION FOR REHEARING EN BANC

SUSAN M. OTTO
Oklahoma Bar Association # 6818
Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Telefacsimile: 405 609-5932
Electronic mail:  Susan_Otto@fd.org

JARED TYLER
Texas Bar No. 24042073
Tyler Law Firm, PLLC
P.O. Box 764
Houston, Texas  77001
Telephone: 832-377-6161
Electronic mail: jptyler@tylerlawfirm.org

**THIS IS A FEDERAL CAPITAL CASE**

## CERTIFICATE OF INTERESTED PERSONS

Counsel certifies that the following listed persons have an interest in the outcome of this case, although with the exception of the Defendant-Appellant, none of those interests are financial. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

- Christopher Vialva, Movant-Appellant;
- Susan M. Otto and Jared Tyler, counsel for Mr. Vialva in this appeal (and, with respect to Ms. Otto, in the court below);
- Stanley Lee Schwieger and B. Dwight Goains, trial counsel for Mr. Vialva (and, with respect to Mr. Schwieger, on direct appeal);
- Mark R. Stelmach, counsel for the Government in the court below and in this appeal;
- Angela J. Moore, counsel for the Government on direct appeal;
- James William Blagg, Mark L. Frazier, and Capt. Scott L. Frost, trial counsel for the Government; and
- Hon. Walter S. Smith, Jr., United States District Judge, trial judge.

*s/ Jared Tyler*
_____

Jared Tyler
Attorney for Christopher Vialva

## FEDERAL RULE 35(B)(1) STATEMENT

Based on reasoned and studied professional judgment, undersigned counsel believe that the panel decision conflicts with the following decisions of the United States Supreme Court and this Court:

*Williams v. Taylor*, 529 U.S. 362 (2000);
*Miller-El v. Cockrell*, 537 U.S. 322 (2003);
*Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014); and
*Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005).

Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................... ii

FEDERAL RULE 35(B)(1) STATEMENT ............................................................ ii

TABLE OF AUTHORITIES .................................................................................iv

STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION...............1

COURSE OF PROCEEDINGS AND DISPOSITION OF CASE ...........................1

STATEMENT OF FACTS ....................................................................................12

ARGUMENT AND AUTHORITIES.....................................................................12

CONCLUSION .....................................................................................................15

CERTIFICATE OF SERVICE ..............................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Bigby v. Dretke*,
　　402 F.3d 551 (5th Cir. 2005) .......................................................................10
*Coble v. State*,
　　330 S.W.3d 253 (Tex. Crim. App. 2010) .......................................................7
*Escamilla v. Stephens*,
　　749 F.3d 380 (5th Cir. 2014) ................................................................. 12-15
*Harrington v. Richter*,
　　131 S.Ct. 770 (2011)..................................................................................13
*Hernandez v. Johnson*,
　　248 F.3d 344 (5th Cir.2001) .......................................................................10
*Lucas v. Johnson*,
　　132 F.3d 1069 (5th Cir.1998) .....................................................................10
*Miller-El v. Cockrell*,
　　537 U.S. 322 (2003)...................................................................................13
*Pippin v. Dretke*,
　　434 F.3d 782 (5th Cir. 2005) ......................................................................15
*Smith v. Dretke*,
　　422 F.3d 269 (5th Cir. 2005) ............................................................... 12-15
*United States v. Culverhouse*,
　　507 F.3d 888 (5th Cir. 2007) ......................................................................11
*United States v. Hayes*,
　　532 F.3d 349 (5th Cir. 2008) ......................................................................11
*Williams v. Taylor*,
　　529 U.S. 362 (2000)...................................................................................10

**Constitutions and statutes**

28 U.S.C. § 2253................................................................................12, 15

28 U.S.C. § 2254......................................................................................13

**STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION**

The issue presented is whether the Panel denied Mr. Vialva an appeal to which he was entitled by applying a standard for issuance of a certificate of appealability that is too high.

**COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE**

Through ignorance of the federal laws governing funding for ancillary representation services, lack of preparation, and dilatoriness, Christopher Vialva's trial counsel badly mismanaged their sentencing investigation. Counsel failed to understand and follow the procedures for seeking authorization to retain investigative and expert services, causing significant delays. These delays caused counsel to rely on an explicitly labeled "rough draft" of a social history report based upon inadequate investigation. As a consequence of counsel's mismanaged investigation, the defense team painted for the jury a wholly inaccurate picture of Vialva's mental health. Counsel's lack of preparation also resulted in their allowing unreliable and excludable opinion testimony by the Government's expert concerning Vialva's likelihood of future dangerousness.

**A.   Trial.**

At the sentencing hearing, the Government presented evidence that Vialva had been detained as a juvenile in three non-violent property crimes, all of which occurred when he was 12 or younger. USCA5.Vol. 2720–24. The Government also

1

presented evidence of Vialva's purported gang affiliation and adult criminal conduct, most of which involved property offenses and none of which involved violence inflicted by Vialva personally. USCA5.Vol.28.2725–27, 2732–39, 2742–58, 2762–73, 2805–07, 2819–22. Finally, the Government presented victim impact testimony. USCA5.Vol.28.2773–77.

Defense counsel presented the testimony of Vialva's childhood friend, his step-father, and his mother. USCA5.Vol.28.2868–73, 2886-2920; USCA5.Vol.29.2927–59. Counsel also presented one expert, psychologist Mark Cunningham, who used actuarial analysis to opine that Vialva would not be a future danger. USCA5.Vol.29.2960–3115. As the Government summarized the defense case at sentencing: "Vialva's lawyers chose to portray Vialva as a broken vessel: the product of an abusive home, and having Attention Deficit Disorder. Vialva and the government had a battle of experts as to future dangerousness." USCA5.Vol.1.159. The district court summarized the defense case in more detail. USCA5.Vol.1.165–67.

In rebuttal, the Government presented psychiatrist Richard Coons. Coons reviewed Vialva's medical and criminal records, but did not personally evaluate him. USCA5.Vol.29.3156–57. Coons testified that he looks to the person's past history of violence, his attitude about violence, the nature of the underlying offense, the "basic personality and usual behavior of the individual," the person's

conscience, and the society in which the person will be to determine future danger-ousness. USCA5.Vol.29.3157–58. Based on these factors, Coons opined there existed a "significant likelihood" Vialva would continue to be involved in criminal acts. USCA5.Vol.29.3159. The Government gave Coons a hypothetical based on the prosecution's theory of Vialva's role in the capital offense. USCA5.Vol.29.3160–61. Coons opined the hypothetical showed Vialva "does not have a conscience," and therefore presents a "significant danger" in prison. USCA5.Vol.29.3162. Defense counsel did not object to the reliability of the method Coons used to form his opinions, nor did counsel cross-examine Coons about his methodology.

The jury found seven aggravating factors, including future dangerousness. USCA5.Vol.6.798–834. The jury also found one mitigating factor: that Vialva was subjected to emotional and physical abuse as a child. *Id.* The jury determined the aggravating factors outweighed the mitigating factor and sentenced Vialva to death. *Id.*

**B.    Vialva's Substantial Ineffective-Assistance-of-Counsel Claim.**

Vialva's Motion to Vacate presented a substantial claim that he was denied effective assistance of counsel because his counsel inadequately prepared for sentencing. Although counsel retained a mitigation specialist, counsel's ignorance of federal procedures for securing investigative and other services in excess of $7,500

caused their investigation into Vialva's background to grind to a halt when the statutory maximum was reached. These circumstances forced counsel needlessly to spend time litigating funding issues in the critical weeks before trial was to begin. Authorization to retain some additional investigative services was secured just minutes before jury selection began. Counsel did not seek a continuance to afford the defense time to meaningfully use the resources that had been authorized. Instead, counsel proceeded to trial without the most fundamental element of mitigation: the client's social history.

The delay and incomplete social history thwarted counsel's attempt to investigate Vialva's mental health. A consulting psychiatrist retained by the defense advised counsel to retain a neuropsychologist to ascertain how neurological deficits could be affecting Vialva's behavior. Counsel obtained authorization for these services on the eve of trial, but failed to request a continuance to meaningfully use them.

Counsel's mismanaged investigation forced them to turn to future dangerousness expert Mark Cunningham as a last ditch conduit to present mitigating evidence. Further, having chosen to tackle future dangerousness head on through an expert, counsel inexplicably failed to prepare to exclude the Government expert's scientifically unreliable rebuttal testimony. USCA5.Vol.7.1086.

Trial counsel's deficient preparation for sentencing resulted in the omission of significant mitigation evidence, including a critical family history of bipolar disorder. Red flags were patent. Counsel had learned that Vialva's mother had a history of being "emotional," for which she had received therapy. Counsel did nothing to develop this evidence, depriving Vialva's experts of critical evidence of Vialva's untreated bipolar disorder. USCA5.Vol.9.1563, 1611-12; USCA5.Vol.10.1699 (Mr. Vialva's maternal aunts diagnosed with bipolar disorder).

Dr. Daneen Milam, a neuropsychologist retained in post-conviction, was given a thorough and complete social history of Vialva. Dr. Milam concluded that "multiple, overlapping indicators [in Vialva's social history] . . . would have led a neuropsychologist or similar specialist . . . to suspect that [Mr. Vialva] may suffer from organic brain damage and/or Bi-Polar Disorder." USCA5.Vol.9.1578. She noted that Vialva's social history reflected a strong maternal history of bipolar disorder, which would have signaled a need for further mental health investigation. She also noted the existence of a number of factors in Vialva's life history indicating possible organic brain damage and/or bipolar disorder. *Id.* The "rough draft" of Vialva's social history on which trial counsel were forced to rely was devoid of this crucial information.

Neuropsychological tests reflected organic brain impairment. USCA5.Vol.9.1582. Specifically, testing indicated frontal and temporal lobe dysfunction, which causes poor planning and organization skills and has a significant impact on a person's ability to benefit from feedback and alter behavior. *Id*. Dr. Milam further diagnosed Vialva with bipolar disorder.

Vialva's bipolar disorder, as well as that of his mother, would have placed the entire sentencing proceedings in a different light. An expert could have explained how Vialva's untreated bipolar disorder was likely aggravated by the chaotic, traumatic home environment in which he spent his formative years. Vialva's mother's untreated bipolar disorder, which significantly impaired her ability to provide a structured and stable environment for her children, would have aggravated it further. Additionally, and critically, stimulants which had been prescribed for Vialva's misdiagnosed ADHD disorder would have made the condition worse. USCA5.Vol.9.1583–84. Thus, not only was Mr. Vialva's bipolar disorder left untreated, its misdiagnosis and treatment as ADHD exacerbated his illness.

Dr. Cunningham had been given no information about Vialva's family history of bipolar disorder. USCA5.Vol.10.1775. Cunningham believed that knowledge would have significantly impacted his analysis both of Vialva's mitigating circumstances and his risk assessment analysis. USCA5.Vol.10.1775 (*"Bipolar* disorder .

. . can be controlled by medication, thereby minimizing the risk of disruptive behavior in a prison setting").

Finally, had counsel actually prepared to take on the future dangerousness issue by doing anything other than retaining Cunningham, counsel could have successfully excluded Coons's prejudicial and unreliable rebuttal testimony. In *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010), Texas's highest criminal court found that a trial court abused its discretion in admitting Coons's opinions as to the defendant's future dangerousness testimony because it failed to meet even the low standard of reliability governing admission of soft science testimony in Texas. Coons's testimony in *Coble* was based on the same methodology and identical in nature to the testimony in Vialva's case. Had counsel prepared and objected to Coons's opinion testimony based upon its lack of reliability, it should have been excluded in this federal prosecution.

## C.    District court disposition.

The district court denied Vialva's *Strickland* claim on the pleadings without conducting an evidentiary hearing. USCA5.Vol.1.110, 172. The court held Vialva did not prove he was prejudiced. The district court relegated Vialva's allegations concerning Coons' unreliable expert testimony to a footnote, holding without any discussion that it "f[e]ll within the categor[y] of strategy and tactics and cannot

form the basis for an ineffective assistance of counsel claim." USCA5.Vol.1.137. The district court denied a certificate of appealability ("COA"). USCA5.Vol.1.172.

### D. COA proceedings before the Panel.

Vialva sought a COA from this Court on his *Strickland* claim. He argued reasonable jurists could debate the manner by which the district court denied it. Specifically, he urged reasonable jurists could debate the district court's failure to hold an evidentiary hearing and its resolution of controverted facts without evidence. Although there was no evidence at all in the record about the reasons why trial counsel did not move to exclude Coons's testimony on the grounds of unreliability, the district court nevertheless ruled that counsel's actions were "strategy" and "tactics." USCA5.Vol.1.137. This finding was not based on any evidence.

Vialva additionally urged that the district court's legal rulings were reasonably debatable. The district court had held Vialva failed to prove he was prejudiced, but instead of asking whether a reasonable probability of a different result but for trial counsel's deficiencies existed, the district court had merely recited a string of aggravating evidence culminating in a conclusion that Vialva "had a history of violence, from which the jury was entitled to find that he would constitute a continuing danger."[1] USCA5.Vol.1.168. Vialva argued in his COA application that the

---

[1] In fact, the Government did not present any evidence of a "history of violence" by Vialva against others. Although Vialva appears to have had convictions for two incidents involving violence against others, there was no evidence he was the perpetrator of the violence in either. The other criminal acts the Government presented to the jury were property crimes.

district court's conclusion did not address the legal question presented by the *Strickland* claim, which was not about what a jury was *entitled* to find, but about what was reasonably probable that a hypothetical jury could find. The district court had substituted its own opinion of Vialva's deathworthiness for a hypothetical jury's.

The district court had also held that much of the mitigating evidence post-conviction counsel developed had been "presented to the jury through the testimony of Vialva's friends and family and through the testimony of Dr. Cunningham," but had not identified which evidence was cumulative. USCA5.Vol.1.165–67. Vialva contended in his COA application that this was reasonably debatable, because evidence of his untreated and exacerbated bipoloar disorder—the centerpiece of his prejudice argument—was not cumulative of anything presented at trial.

As to untreated bipolar disorder, the district court had held Vialva's counsel would have "faced the proverbial double-edged sword" because if counsel had "introduced even more evidence of mental and/or brain disorders, the jury could very well have concluded from that alone that Vialva would continue to be a danger to others, whether incarcerated or not." USCA5.Vol.1.167–68. Vialva argued this applied the wrong legal standard. The standard is not whether a jury "could very well have" sentenced Vialva to death in light of the omitted mitigating evidence, but whether there existed a reasonable probability a jury *would not have*. The district

court had utilized a standard orders of magnitude higher than *Strickland* allows by requiring Vialva to prove that under no circumstance could the jury have sentenced him to death to establish prejudice. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Vialva also contended this holding was reasonably debatable because it was wrong as a matter of law. Vialva's bipolar disorder was not "double edged" precisely because bipolar disorder is treatable. USCA5.Vol.9.1585. Vialva pointed out that this Court has repeatedly held that evidence that a mental illness is treatable mitigates future dangerousness. *See Bigby v. Dretke*, 402 F.3d 551, 571 (5th Cir. 2005); *Hernandez v. Johnson*, 248 F.3d 344, 349 (5th Cir. 2001); *Lucas v. Johnson*, 132 F.3d 1069, 1082-83 (5th Cir.1998). Evidence that Vialva had bipolar disorder; how his bipolar disorder in conjunction with his neuropsychological deficits affected his behavior; that Vialva's bipolar disorder was exacerbated by mistreatment of ADHD; and that his bipolar disorder could be controlled in prison with proper medication could *only* have benefitted Vialva at sentencing.

Vialva finally contended that the district court had failed to consider how trial counsel's failure to exclude Coons's unreliable opinion testimony in conjunction with counsel's other errors would have affected the verdict. The district court had observed that Vialva's allegations concerning counsel's failure to exclude Coons's expert testimony "f[e]ll within the categor[y] of strategy and tactics and

cannot form the basis for an ineffective assistance of counsel claim." USCA5.Vol.1.137. Vialva argued this conclusion was debatable because the court's speculation about trial counsel's decisions could not suffice as a basis for merits disposition. There was no evidence before the district court about any strategy for needlessly allowing the admission of unreliable, aggravating scientific testimony against counsel's client. In short, the district court had decided a disputed question of material fact without hearing evidence. *See United States v. Hayes*, 532 F.3d 349, 355 (5th Cir. 2008) (absent a hearing, there is "no way to analyze [counsel's] potential strategy"); *United States v. Culverhouse*, 507 F.3d 888, 898 (5th Cir. 2007) (absent a hearing, reviewing court can make only "hindsight guesses" regarding counsel's strategy).

The Panel denied COA. *United States v. Bernard*, slip op., No 13-70013 (Appendix A). In doing so, the Panel did not address Vialva's allegations that his trial counsel failed to conduct a reasonable sentencing investigation. Instead, it held that the district court's conclusion that "counsels' decision to call Dr. Cunningham [to testify] was not ineffective" was not debatable by reasonable jurists. App. A at 18. It also held that, "even if counsel had been ineffective in their use of experts at the penalty stage," COA was not warranted because Vialva had "not proven that he was prejudiced." *Id*. The Panel held that reasonable jurists could not debate the district court's prejudice conclusion because the evidence at trial "estab-

11

lished that Vialva was the leader of the group." *Id.* As to the denial of an evidentiary hearing on Vialva's *Strickland* claim, the Panel held that reasonable jurists could not debate the district court's decision not to hold a hearing in light of the Panel's reasons for finding the district court's disposition of the claim not reasonably debatable. *Id.* at 25.

## STATEMENT OF FACTS

The facts are the course of proceedings and disposition of the case.

## ARGUMENT AND AUTHORITIES

The Panel decision denying COA conflicts with decisions of this Court in *Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014), and *Smith v. Dretke*, 422 F.3d 269, 283 (5th Cir. 2005), finding alleged *Strickland* claims debatable. *Escamilla* and *Smith* applied a standard for determining debatability consistent with Supreme Court precedent. The standard applied by the Panel in this case was far too high and requires correction by the *en banc* Court. Absent correction, Vialva will be deprived of an appeal to which he is legally entitled.

A COA to appeal the denial of a habeas corpus application must issue if an inmate "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court has rejected a prisoner's constitutional claim on the merits, a COA must issue if the prisoner demonstrates jurists of reason could debate whether the district court's resolution of his constitutional claims was

correct, or could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. *Id.* at 337. In capital cases, all doubts as to the appropriateness of a COA are resolved in favor of the petitioner. *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In *Escamilla* and *Smith*, a capitally sentenced state prisoner sought certification to appeal the district court's denial of a *Strickland* claim that had been adjudicated on the merits by the state court. Because 28 U.S.C. § 2254(d) applied, the Court had to determine more than just whether the *claim* was debatable. It also had to determine whether the state court's denial of the claim was debatably *unreasonable*, a standard that is "meant to be" "difficult to meet." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011); *see also id.* (describing standard as requiring a showing that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

In both cases, the Court concluded the petitioners met their burden of showing debatability. In *Smith*, the Court held "jurists of reason could find that it is debatable whether trial counsel adequately investigated Smith's family and social background" in light of conflicting evidence in the record concerning the scope of

trial counsel's investigation. 422 F.3d at 282. Further, it was debatable whether the scope of trial counsel's investigation into their client's mental health was reasonable in light of the information they knew about his substance abuse. *Id*. at 283. The Court additionally found that prejudice was debatable in light of scant mitigation presented at trial, and notwithstanding significant aggravating evidence that Smith had committed numerous murders and robberies. *Id*. at 271-72, 284.

In *Escamilla*, the Court relied on *Smith* and held reasonable jurists could debate whether the state court's denial was unreasonable in light of allegations that (1) counsel had neglected to obtain certain records; (2) counsel's background investigation was limited to relatives and acquaintances; (3) counsel's investigation of the client's mental health was dilatory and unsupported by an adequate social history; and (4) counsel failed to conduct a timely mitigation investigation. *Escamilla*, 749 F.3d at 392. "These failures debatably amount to deficient performance under *Strickland* and its progeny because together, they could reflect a mitigation investigation that fell below an objective standard of reasonableness." *Id*. Reasonable jurists would also debate whether the state habeas court's decision to give deference to trial counsel's strategic decision was objectively unreasonable in light of the debatability of the reasonableness of trial counsel's investigation. *Id*. at 393.

The court further held that reasonable jurists could debate whether the state habeas court's conclusion that Escamilla failed to establish prejudice was objec-

tively unreasonable because "this court has found that counsel's failure to present the true nature of the petitioner's disadvantaged upbringing debatably establishes prejudice even when the petitioner was convicted of committing a series of senseless murders." *Id*. at 393 (citing *Smith*, 422 F.3d at 271-72).

Vialva's deficiency and prejudice allegations are materially indistinguishable from those in *Smith* and *Escamilla*, and the decisions are therefore in conflict.[1] *Escamilla* and *Smith* are binding precedent, and they more faithfully apply the COA standard announced by the Supreme Court. Moreover, the failure to apply the proper debatability standard to Vialva's *Strickland* claim infected the Panel's debatability holding concerning the district court's failure to hold an evidentiary hearing. The Court should therefore grant rehearing en banc to secure and maintain uniformity of the Court's decisions and to resolve the conflict the Panel decision creates with Supreme Court cases interpreting and applying 28 U.S.C. § 2253.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing *en banc*.

Respectfully submitted,

---

[1] Additionally, the Panel decision's assessment of prejudice conflicts with *Williams v. Taylor*, 529 U.S. 362 (2000), and *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Panel decision relied on the "fundamental unfairness" prejudice standard applied in *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This standard, however, is too onerous for the type of claim raised. *See Williams*, 529 U.S. at 393 (*Lockhart* standard has no application to claim challenging reasonableness of counsel's investigation). More fundamentally, however, is that by deciding the prejudice question at all, the Panel decision decided the merits of Vialva's appeal without jurisdiction, in violation of *Miller-El*. 537 U.S. at 336-37.

s/ Jared Tyler

SUSAN M. OTTO
Oklahoma Bar Association # 6818
Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Telefacsimile: 405 609-5932
Email: Susan_Otto@fd.org

JARED TYLER
Texas Bar No. 24042073
Tyler Law Firm, PLLC
P.O. Box 764
Houston, Texas 77001
Telephone: 832 377-6161
Email: jptyler@tylerlawfirm.org

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 25th of September, 2014.

*s/ Jared Tyler*

Jared Tyler
Attorney for Christopher Vialva